UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ZURICH AMERICAN INSURANCE
COMPANY, *et al.*,

                              Plaintiffs,

-v-

SUPREME FOOD SERVICE AG, *et al.*,

                              Defendants.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-8-13

No. 12 Civ. 9117 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

    The Court is in receipt of the attached joint letter from the parties, setting forth a discovery dispute over the scope of Defendants' requests for e-mails and other electronic data. Plaintiffs explain that Defendants' thirteen document requests would require a review of more than 1.5 million pages of electronic documents, which they believe would be unreasonably burdensome and expensive, given the size and substance of this contract dispute. Plaintiffs suggest two alternatives: (1) narrowing the universe of documents to those possessed by two custodians that Plaintiffs believe possess most or all of the relevant documents or (2) splitting with Defendants the cost associated with the review and production. Defendants reply that their requests are narrowly tailored and that Plaintiffs should be required to respond in full to their requests.

    "Discovery . . . , 'like all matters of procedure, has ultimate and necessary boundaries,'" which the Court must enforce when there are fairer and more efficient alternatives to a party's desired plan of action. *Youngblood v. Family Dollar Stores, Inc.*, Nos. 09 Civ. 3176 (RMB) (FM), 10 Civ. 7580 (RMB) (FM), 2011 WL 1742109, at *1 (S.D.N.Y. Jan. 5, 2011) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Here, Plaintiffs' proposed

alternatives are unjustified. Plaintiffs argue that courts may limit the number of custodians from whom electronic records must be produced, but in the case Plaintiffs cite, the court limited the number of eligible custodians to *fifteen*, and required the producing party to provide preliminary discovery so that the requesting party could choose the fifteen custodians and make sure they were the right ones. *See Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 53–54 (S.D.N.Y. 2009). Here, Plaintiffs provide no basis for Defendants or the Court to determine that the two proffered custodians are the right people or why the other custodians' documents fall outside the proper bounds of discovery. As for Plaintiffs' proposal to split discovery costs, they have hardly overcome the presumption that the producing party bears the costs of production. *See Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 317, 320 (citing *Oppenheimer Fund*, 437 U.S. at 358); *see also Adair v. EQT Prod. Co.*, No. 1:10cv37, 2012 WL 1965880, at *3–4 (W.D. Va. May 31, 2012) (recognizing the presumption that the producing party bears the cost of responding to properly initiated discovery requests). Plaintiffs hold up the number "1.5 million" as if it had talismanic significance, but they do not explain why Defendants' request is unreasonable or why culling through that many electronic files would be an unduly burdensome task in this digital age. The volume of documents does not, on its own, overcome the presumption against cost-sharing.

Given the "broad scope of discovery" to which Defendants are entitled under the Federal Rules of Civil Procedure, the Court concludes that neither of Plaintiffs' proposals is justified. *See, e.g., Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 882 F.2d 682, 687 (2d Cir. 1989) *abrogated on other grounds by Cunningham v. Hamilton Cnty*, 527 U.S. 198, 210 (1999). Nevertheless, Defendants have offered to identify search terms that would serve to limit Plaintiffs' production obligations. Based on the Court's "broad discretion to manage the manner in which discovery

proceeds," *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003), IT IS HEREBY ORDERED THAT the Defendants shall provide Plaintiffs with search terms that may help to narrow the universe of potentially relevant documents, and Plaintiffs shall produce all documents from that universe that are responsive to Defendants' requests.

SO ORDERED.

DATED:   August 8, 2013
         New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

The Honorable Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Room 640
New York, NY 10007-1316

August 6, 2013

Re: *Zurich American Insurance Company and Zurich Services Corporation v. Supreme Foodservice AG, Supreme Foodservice GmbH, Supreme Group Holding SARL, and Supreme Fuels FZE*, Civil Action No. 12-CV-9117 (RJS)

Dear Judge Sullivan:

Pursuant to Rule 2.G of your Individual Practices, the parties respectfully submit this joint letter regarding a discovery dispute over the scope of defendants' requests for email and other electronic data. The undersigned counsel for the parties met and conferred on this dispute by phone on June 3, 2013, at 2:00 PM for approximately half an hour, and have since exchanged correspondence on their respective positions, and have been unable to reach a resolution. Because of the tight deadlines for discovery in this case, which both sides wish to meet, we respectfully request a brief conference within the next two weeks to resolve this issue.

**1.  Background**

The Zurich Plaintiffs in this case are seeking reimbursement for certain benefits and expenses, which they paid and incurred under a services contract and two workers' compensation policies, estimated to total approximately $3 million. Plaintiffs allege that, under the plain language of the services contract, the Supreme Defendants have an unconditional obligation to reimburse Zurich for those benefits and expenses. Plaintiffs further allege that the Supreme Defendants improperly caused Zurich to make payments, and incur expenses, that were not covered by the policies. Supreme caused these payments and expenses by falsely reporting workers' compensation claims as arising under contracts performed for the U.S. Military, and thus being covered claims subject to the Defense Base Act, 42 U.S.C. §§ 1651-1654 (the "DBA"). In fact, the workers' compensation claims arose out of work performed pursuant to contracts with NATO, which are not subject to the DBA and thus not covered by the policies. Nothing in the policies requires Zurich to administer or pay claims that are falsely reported.

Defendants counter on the grounds that the payments or benefits paid, or expenses incurred, regarding work performed under NATO related contracts were not made mistakenly but required. Defendants allege that the claims had to be filed with the United States Department of Labor ("DOL") and that, through the date that the NATO claims were administratively closed, the DOL required Plaintiffs to handle and process the claims and be responsible for any statutory financial obligations. Additionally, Defendants allege that Plaintiffs, as the insurers, have the responsibility for determining whether a reported claim falls under the DBA, and therefore within the ambit of the policies. Thus, Defendants allege that Plaintiffs waived or are estopped from seeking damages for any payments or benefits paid, or expenses incurred. Further,

1

Defendants allege that Plaintiffs were obligated to make such payments or incur such expenses because they collected premiums based on NATO related claims. The Supreme Defendants paid Zurich upwards of $40 million as premiums for the policies, and Zurich paid out or incurred only approximately $8 million in benefits or expenses. Finally, Defendants contend that Plaintiffs are not entitled to restitution for such payments or expenses pursuant to the terms of the policies or under relevant common-law.

2. **The Discovery Dispute—The Zurich Plaintiffs' Position**

In connection with these claims and defenses, the Supreme Defendants have served thirteen requests for documents, which include requests for email and other electronic data. The Zurich Plaintiffs have conducted a preliminary search for that electronic information, and have determined that Defendants' requests would require the review of more than 1.5 million pages of electronic documents. As a result, the Zurich Plaintiffs have objected to this review on the grounds that it is unreasonably burdensome and expensive in a case of this size, and unwarranted given the narrow contract issues in dispute. *See* Fed. R. Civ. P. 26(b)(2)(B) & (C)(iii). In order to meet the rapidly approaching discovery deadlines, and to ensure that discovery is conducted efficiently and economically in this case, the Zurich Plaintiffs asked Defendants to consider two alternative proposals:

*First*, Defendants would narrow their requests to the custodians most likely to have a large percentage, if not all, of the relevant documents, as courts have done in other cases. *See Capitol Records, Inc. v. MP3tunes, LLC*, 261 F.R.D. 44, 53-54 (S.D.N.Y. 2009) (limiting the number of employees' email accounts required to be searched during discovery); *Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*, No. 08-C-828, 2011 WL 1527025, at *1 (E.D. Wis. Apr. 20, 2011) (restricting expansive discovery requests that imposed an undue burden on the producing party). Specifically, Zurich is willing to search for documents responsive to Defendants' requests in the electronic files of Larry Boyk and Greg Larson, respectively the Underwriting Manager for the policies and the Assistant Vice President in charge of processing the claims at issue in this case, who are the two individuals most likely to be on emails with respect to the negotiation, administration, and claims under the services contract and workers' compensation policies. Moreover, they are the individuals who are most likely to be Zurich's witnesses at trial. Even searching the electronic files of these two custodians would result in a large number of documents, but it would be more manageable, and less expensive, than reviewing more than 1.5 million pages of documents. Zurich would agree to a similar arrangement for Defendants' production of documents.

*Second*, Defendants would agree to share half the cost of retrieving, reviewing and producing the electronic documents that are responsive to their requests. Zurich's best current estimate of that cost is at least $75,000. Cost sharing in this way is a method that courts have regularly employed in other cases to address burdensome discovery requests. *See, e.g., Adair v. EQT Prod. Co.*, No. 1:10cv00037, 2012 WL 1965880, at *3-4 (W.D. Va. May 31, 2012). Even where "emails are readily accessible," a court "may consider the cost of review of [electronically stored information] for privileged or responsive information in deciding whether discovery imposes an undue burden or cost on a responding party." *Id.* at *4.

2

In addition to producing documents pursuant to either proposal, Plaintiffs have also offered to give Defendants full electronic access to Zurich's claims files that are relevant to this action (which contain documents and communications regarding the details of the underlying injury or death, and the receipt, investigation, processing and payment of the claims, including communications and forms filed with DOL). To further assist in this regard, on the June 3 call, Plaintiffs agreed to exchange sample claims files with Defendants, and provided three such files on July 31, 2013.

Defendants have rejected the alternative proposals on the ground that their requests are specifically tailored to the issues in this case. By definition, the requests are not narrowly tailored if they require the search, review and production of millions of pages of documents in a relatively small and simple contract case. Defendants have also rejected these alternative proposals on the ground that the case law does not permit cost sharing in these circumstances. That argument misunderstands Plaintiffs' position: Zurich is seeking a protective order in this case limiting Defendants' requests on the ground that they will create unreasonable burden and expense, and are not likely to lead to the discovery of relevant evidence, because they call for the search of millions of pages of documents in a relatively small and simple contract case where the issues do not require massive amounts of discovery. As a compromise, to avoid this discovery dispute, Plaintiffs have proposed to limit the number of custodians to reduce duplication, or to share the cost of the burdensome, expensive and duplicative discovery. That does not require an analysis under Fed. R. Civ. P. 26(b)(2)(B), as Defendants suggest. It is simply a practical way to try to address the problem created by Defendants' otherwise impermissible discovery demands.

The Zurich Plaintiffs respectfully request that the Court either require Defendants to accept one of these alternatives on the grounds that the discovery requests as currently constituted are unreasonably burdensome and expensive, and are not likely to lead to the discovery of relevant evidence.

### 3.     The Discovery Dispute—The Supreme Defendants' Position

Defendants urge that Plaintiffs, who are part of the Zurich Insurance Group, a company which holds itself out as a leading insurance provider with global reach, brought this action against the Supreme Defendants, now seek to shift the burden and cost of discovery. There is no question that Plaintiffs are well-funded insurers and active litigants.

As an initial matter, to fall within the ambit of Fed. R. Civ. P. 26(b)(2)(B), Plaintiffs must show that the electronically stored information is "not reasonably accessible." However, "[w]hile cost and burden are critical elements in determining accessibility, a showing of undue burden is not sufficient by itself to trigger a finding of inaccessibility. For example, the sheer volume of data may make its production expensive, but that alone does not bring it within the scope of Rule 26(b)(2)(B). Rather, the cost or burden must be associated with some technological feature that inhibits accessibility." *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 301 (S.D.N.Y. 2012). Plaintiffs do not contend, and they have not demonstrated, that the cost and burden associated with extracting ESI from any of the relevant sources is a function of the means of storage (indeed, Plaintiffs' concern is due solely to the volume) and thus they are not entitled to cost-shifting on that basis. *Id.*, at 302.

3

Second, there is no basis to limit Plaintiffs' search to only two custodians or shift a relatively minimal cost of $75,000 to the Supreme Defendants pursuant to Fed. R. Civ. P. 26(b)(C)(iii). The $75,000 cost is not out of proportion to the approximately $3 million Plaintiffs are seeking on their claims and the over $7 million Defendants are seeking on their counterclaims, particularly when Defendants paid approximately $40 million in premiums to Plaintiffs. Further, Plaintiffs' first proposal does not take into account that although Messrs. Boyk and Larson may have been significantly involved in these issues, particularly after they came to light, it is not at all clear, at this stage of discovery, that they would be the custodians who would have many of the relevant documents, including documents concerning the Zurich Plaintiffs' investigations into and decisions to pay benefits or incur expenses with respect to the claims at issue in this action. Plaintiffs cite no case that limits the search of e-mails to two custodians. The *Capitol Records* case required the search of 15 custodians' records. The *Thermal Designs, Inc.* case restricted discovery only after Plaintiffs had produced 1.46 million pages of ESI.

Defendants' discovery requests are narrowly tailored to the issues at hand in this case and Plaintiffs do not explain why the requests result in such a large number of pages, particularly when Defendants' expect their review to yield significantly fewer documents. The requests seek documents and communications, within Zurich and between Zurich, Plaintiffs, and the DOL, concerning the claims at issue, including Plaintiffs' investigations into such claims, documents and communications concerning the payments made concerning the claims at issue, documents concerning invoices to the Supreme Defendants, the calculation and audits of the premiums for the relevant Policies, and premium payments made by the Supreme Defendants.

Such documents are relevant to identifying the claims at issue, the amount of damages, if any, and the Supreme Defendants' defenses, including whether or not Plaintiffs were required to make such payments by the DOL, breached the Services Contract or Policies by failing to properly review and investigate the claims, or are estopped, pursuant to common-law, from seeking reimbursement for claims they mistakenly paid. Documents concerning the Supreme Defendants' premium payments are relevant to their counterclaims, which seek the return of a premium overpayment of $6,807,658 that Plaintiffs admit Supreme Group overpaid, and, in the alternative, the return of overpaid premiums that Plaintiffs calculated based on payments for NATO related claims.

The Supreme Defendants have stated that they do not want any medical records from the relevant claims files. The parties have also exchanged sample claims files in the hopes of further limiting what may be needed from such files. Plaintiffs did not agree to provide such sample files until July 29, 2013, and did not provide them until July 31, 2013. The Supreme Defendants are in the process of reviewing them. Moreover, the parties discussed limiting the production by setting up search terms, but Plaintiffs have not agreed to this proposal.

Accordingly, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues in this matter, the Zurich Plaintiffs should be required to fully respond to the Supreme Defendants' requests. Fed. R. Civ. P. 26(b)(C)(iii).

Respectfully,

| | |
|---|---|
| /s/Charles C. Platt | /s/Robert L. Begleiter |
| Charles C. Platt | Robert L. Begleiter |
| Rebecca A. Haciski | Samuel L. Butt |
| Wilmer Cutler Pickering Hale and Dorr LLP | Schlam Stone & Dolan LLP |
| 7 World Trade Center, 250 Greenwich Street | 26 Broadway |
| New York, NY 10007 | New York, NY 10004 |
| (212) 230-8800 | (212) 344-5400 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendants* |

5