Charles C. Platt
Rebecca A. Haciski
WILMER CUTLER PICKERING
  HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ZURICH AMERICAN INSURANCE COMPANY and ZURICH SERVICES CORPORATION,**<br><br>    Plaintiffs,<br><br>-against-<br><br>**SUPREME FOODSERVICE AG, SUPREME FOODSERVICE GmbH, SUPREME GROUP HOLDING SARL, and SUPREME FUELS FZE,**<br><br>    Defendants. | **Civil Action No. 12-CV-9117** |

**FIRST AMENDED COMPLAINT**

Plaintiffs Zurich American Insurance Company ("Zurich American") and Zurich Services Corporation ("Zurich Services"), by and through undersigned counsel, allege as follows:

**INTRODUCTION**

1.  Plaintiffs Zurich American and Zurich Services are entitled to reimbursement from Defendants Supreme Foodservice AG ("Supreme AG"), Supreme Foodservice GmbH ("Supreme GmbH"), Supreme Group Holding SARL ("Supreme Group"), and Supreme Fuels FZE ("Supreme Fuels") for certain claims that Plaintiffs paid under a services contract, and for certain benefits Plaintiffs provided, and claims expenses they incurred, under two workers' compensation insurance policies.

2.  Specifically, from April 16, 2009, through November 20, 2011, Zurich American insured Defendants under two policies and their respective renewals. Defendants improperly caused Zurich American to make payments, provide benefits and incur expenses by falsely reporting certain claims as being subject to the Defense Base Act, 42 U.S.C. §§ 1651-1654 (the "DBA"), on forms filed with the U.S. Department of Labor ("DOL"), and by incorrectly submitting those claims to Zurich American even though those claims were not covered by the insurance policies. Plaintiffs reasonably relied upon Defendants' false reports and incorrect submissions in paying claims, providing benefits and incurring expenses for Defendants. For no legitimate reason, Defendants have rejected Zurich American's demand for reimbursement for the payments made, the benefits provided, and the related expenses incurred as a result of the improperly submitted claims.

3.  In addition, Zurich Services administered certain claims occurring between January 1, 2006, and November 19, 2009, on behalf of Defendants pursuant to a services contract. For no

legitimate reason, Defendants have rejected, in full or in part, invoices from Zurich Services from March 1, 2012, through at least May 2, 2013, for reimbursement of claims paid and related expenses incurred under the services contract. A portion of the unpaid invoices are based on payments and expenses from claims that Defendants falsely reported as being subject to the DBA on forms filed with the DOL, and that Defendants incorrectly submitted to Zurich Services even though those claims were not covered by the services contract.

4.      Defendants are therefore liable for an amount to be determined at trial under their contracts, the common law, and the rules of equity.

## PARTIES

5.      Plaintiff Zurich Services is a corporation organized under the laws of Illinois, with its principal place of business at 1400 American Lane, Schaumburg, Illinois.

6.      Plaintiff Zurich American is a corporation organized under the laws of New York, with its principal place of business at One Liberty Plaza, 165 Broadway, 32nd Floor, New York, New York.

7.      Upon information and belief, Defendant Supreme AG is a corporation organized under the laws of Switzerland, with its principal place of business at Turbinenweg 2, 8866 Ziegelbrücke, Switzerland, or Spinnereistrasse 2, 8866 Ziegelbrüecke, Switzerland.

8.      Upon information and belief, Defendant Supreme GmbH is a corporation organized under the laws of Switzerland, with its principal place of business at Turbinenweg 2, 8866 Ziegelbrücke, Switzerland, or at Spinnereistrasse 2, 8866 Ziegelbrüecke, Switzerland.

9.      Upon information and belief, Defendant Supreme Group is a corporation organized under the laws of Switzerland or Luxembourg, with its principal place of business at Spinnereistrasse 2, 8866 Ziegelbrüecke, Switzerland, or 15, Rue Edward Steichen, Luxembourg.

10.     Upon information and belief, Defendant Supreme Fuels is a corporation organized under the laws of Switzerland, with its principal place of business at Turbinenweg 2, 8866 Ziegelbrüeke, Switzerland.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest or costs, and is between citizens of the States of New York and Illinois and citizens of the foreign states of Switzerland and/or Luxembourg.

12.     The Court has personal jurisdiction over each of the Defendants because they have purposefully availed themselves of the laws of the United States and the State of New York by, among other things: obtaining insurance policies from Zurich American, a New York corporation; filing directly or through their agent the claims forms for workers' compensation payments that are at issue in this lawsuit with the DOL office in New York City; communicating directly regarding those claims with the DOL District Director in New York City through their Group Risk Manager; engaging an attorney in New York City to represent them, and to communicate with the DOL on their behalf, with respect to the claims filed with the DOL office in New York City; engaging an attorney in Washington, D.C. to represent them before, and send letters and other communications to, the DOL in New York City regarding the claims; and meeting with representatives of Zurich American on at least one occasion in New York to discuss the claims that are at issue in this lawsuit. As additional grounds for establishing that this Court has personal jurisdiction over Defendants, Plaintiffs rely upon the allegations set forth in this Complaint.

13.     Venue is appropriate in this district under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and Defendants are subject to the Court's personal jurisdiction here.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

A.     The Defense Base Act Services Contract Issued To Defendant Supreme Group

14.     On or about May 18, 2010, Plaintiff Zurich Services and Defendant Supreme Group entered into a Claims Services Contract (the "Services Contract").

15.     Pursuant to that Services Contract, Zurich Services agreed to provide claims services "with regard to all Defense Base Act claims" occurring between January 1, 2006, and April 15, 2009. The Services Contract was later amended to cover claims occurring through November 19, 2009.

16.     The claims services that Zurich Services agreed to provide included reviewing, investigating, adjusting, and paying, on behalf of Supreme Group, "all claims presented to [Zurich Services] by [Supreme Group]." The Services Contract states that Supreme Group has the duty to "provi[de] funds to [Zurich Services] for the payment of all claims and … [e]xpenses related to the claims."

17.     The Services Contract also states that Zurich Services "does not act as an insurer for [Supreme Group] and [the Services Contract] shall not be construed as an insurance policy or any contract or agreement of indemnity; it being understood that [Zurich Services] itself is, in no event, financially responsible for payment of or the satisfaction of any of the claims serviced pursuant to this Agreement." The Services Contract further states that Supreme Group "shall indemnify and hold [Zurich Services] harmless against any liability arising out of or related to … any act or omission of [Supreme Group], … [Supreme Group's] failure to pay any Claim or

[related] Expense(s) on a timely basis, [or] the failure of [Supreme Group] to fulfill any of its obligations under this Agreement."

18.    Upon information and belief, Defendants are self-insured with respect to claims arising under the Services Contract.

B.    The Defense Base Act Policies Issued To Defendants

19.    Defendants obtained workers' compensation insurance from Plaintiff Zurich American with respect to other DBA claims. Specifically, Zurich American issued to Defendant Supreme AG a policy, numbered WC 3995299, that was effective on April 16, 2009, for one year. The policy was subsequently renewed effective April 16, 2010, and again effective April 16, 2011, except the named insured on those policies was Defendant Supreme Group.

20.    Policy WC 3995299 contains a "Defense Base Act Coverage Endorsement" that provides coverage for certain work performed by the policy-holders, Supreme AG and subsequently Supreme Group, and all of their subcontractors under a contract with the U.S. Military. That work is described as "[d]elivery of food and provisions to the US Military under Defense Supply Center Philadelphia (DSCP) contract number SPM 300-05-D-3130."

21.    Zurich American issued to Defendants Supreme GmbH and Supreme Fuels a policy, numbered WC 3995351, that was effective on November 20, 2009, for one year. That policy was subsequently renewed effective November 20, 2010, except the named insured was Defendant Supreme Group.

22.    Policy WC 3995351 contains a "Defense Base Act Coverage Endorsement" that provides coverage for certain work performed by the policy-holders, Supreme GmbH, Supreme Fuels, and subsequently Supreme Group, and all of their subcontractors under certain other contracts with the U.S. Military. That work is described as "[d]elivery of fuel and fuel site services in

Afghanistan under contracts numbers SP0600-09-D-1011 and SP0600-080D-1018 with the U.S. Defense Energy Support Center."

23.     The policy form provisions attached to both policies state in "Part One—Workers' Compensation Insurance" that Zurich American "will pay promptly when due the benefits required of [Defendants] by the [DBA]."

24.     The policy form provisions also state that Zurich American has "the duty to defend at [its] expense any claim … against [Defendants] for benefits payable by [the workers' compensation insurance policies]." The policy form provisions expressly impose on Zurich American "no duty to defend a claim … that is not covered by [the policies]."

25.     Finally, the policy form provisions state that Zurich American "will not pay more than [its] share of benefits and costs," and that Defendants "are responsible for any payments in excess of the benefits regularly provided by the workers' compensation law." If Zurich American should make any payments in excess of benefits regularly provided by the workers' compensation law on Defendants' behalf, Defendants are required to "reimburse" Zurich American "promptly."

C.     The Claims Improperly Submitted By Defendants Under The Policies

26.     Defendants were required under the DBA to file reports with the DOL in the event that their employees, or their subcontractors' employees, suffered injuries or death while performing work under their contracts with the U.S. Military. Beginning in or around March 2010 and continuing until December 2010, Defendants filed forms with the DOL, through its office in New York City, falsely reporting that a large number of injuries and deaths had been suffered by employees of its subcontractor, Compass Security ("Compass"), while those employees were performing work pursuant to the three contracts referred to above, Defense Supply Center

Philadelphia (DSCP) contract numbered SPM 300-05-D-3130 and the Defense Energy Support Center contracts numbered SP0600-09-D-1011 and SP0600-080D-1018 (collectively, "the U.S. Military Contracts").

27. On the forms, Defendants affirmatively identified the claims for injuries or deaths as falling under the DBA.

D.   Investigation And Payment Of Defendants' Claims

28. These forms also constituted (i) claims submitted by Supreme Group to Zurich Services under the Service Contract that covered DBA claims (the "Services Claims") and (ii) claims for benefits by Defendants under the two insurance policies WC 3995299 and WC 3995351 that were issued by Zurich American and that provided coverage for work done by Defendants pursuant to the U.S. Military Contracts that were subject to the DBA (the "Insurance Claims").

29. Defendants represented to Plaintiffs that all the claims submitted arose under the DBA. Plaintiffs reasonably relied upon that representation. They proceeded to investigate and pay the Services Claims and to provide benefits and incur expenses with respect to the Insurance Claims, as appropriate under the Services Contract and the insurance policies.

E.   Identification Of The Supreme Claims As NATO-Related

30. In or around July 2011, after Plaintiffs had been paying the Services Claims, and providing benefits and incurring expenses with respect to the Insurance Claims, for many months, Defendants advised Plaintiffs that many of these claims arose during work that they and Compass were performing under a North Atlantic Treaty Organization ("NATO") contract, *not* under their U.S. Military Contracts, and that the claims were thus not covered by the DBA.

31. Plaintiffs eventually determined that 603 claims that Defendants had submitted to them were NATO-related, and had been falsely reported to the DOL under the DBA. Based on those

false reports and any others that may later be identified, Defendants improperly caused Zurich Services to make payments on the Services Claims, and improperly caused Zurich American to provide benefits payments and incur related expenses with respect to the Insurance Claims, in an amount to be determined at trial.

32.     On or about February 12, 2012, the DOL advised that 211 claims that had been falsely reported, and identified as NATO-related claims, would be administratively closed. The DOL reached this decision based on evidence showing that the claims arose from work done pursuant to NATO Fuels Contract #IFIB/JBJ8P @ C/06-72. On or about January 4, 2013, the DOL advised that the remaining 392 NATO-related claims would similarly be administratively closed.

33.     Upon information and belief, Defendants are self-insured with respect to NATO-related claims arising in Afghanistan and Iraq.

F.     Defendants' Failure To Pay

34.     Defendants have failed to reimburse Plaintiffs for certain amounts they paid, benefits they provided and expenses they incurred under the Services Contract and insurance policies.

35.     On and after May 16, 2012, Zurich Services requested payment on nine invoices dating from March 1, 2012, through May 2, 2013, for claims paid and related expenses incurred under the Services Contract (invoice numbers 2000427507, 2000432146, 2000436312, 2000440442, 2000445190, 2000462513, 2000475905, 2000484878, and 2000489242) (the "Invoices"). The Invoices covered both DBA and NATO-related claims.

36.     Defendants have refused to pay at least $584,737.96 due under the Invoices, as follows:

| Invoice Number | Invoice Amount | Invoice Date | Balance Due |
|----------------|----------------|--------------|-------------|
| 2000427507 | $ 613,742.64 | 3/1/2012 | $ 393,226.25 |
| 2000432146 | $ 165,447.46 | 4/1/2012 | $ 137,646.47 |
| 2000436312 | $ 26,017.88 | 5/1/2012 | $ 23,260.98 |
| 2000440442 | $ 11,608.84 | 6/1/2012 | $ 1,266.34 |
| 2000445190 | $ 2,961.74 | 7/1/2012 | $ 2,961.74 |
| 2000462513 | $ 21,507.56 | 11/1/2012 | $ 17,766.10 |
| 2000475905 | $ 1,269.00 | 2/4/2013 | $ 1,269.00 |
| 2000484878 | $ 6,058.33 | 4/1/2013 | $ 6,058.33 |
| 2000489242 | $ 1,282.75 | 5/2/2013 | $ 1,282.75 |

Total      $   584,737.96

37.   In addition, on and after May 2, 2013, Defendants have continued to cause Zurich Services to make additional payments and incur additional related expenses for claims under the Services Contract, in an amount to be determined at trial.

38.   On or about June 5, 2012, Zurich American sent a demand letter to Defendants, requesting reimbursement for benefits provided and expenses incurred in connection with Insurance Claims that were NATO-related. Defendants refused to provide that reimbursement.

G.   Audit Of Supreme Group's Premium

39.   On or before October 10, 2012, Zurich American completed an audit of Supreme Group's policy WC 3995299 for the period of April 16, 2011, through April 16, 2012. The audit indicated that the policy had earned a premium of $10,496,434, and that Supreme Group had paid a premium of $17,304,092. Thus, the premium required an adjustment amounting to $6,807,658.

**FIRST CLAIM FOR RELIEF**

(Breach of Contract—Services Contract Claims)

40.   Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

41.    The Services Contract provided for Zurich Services to make payments on Supreme Group's behalf on Services Claims that were covered under the DBA.

42.    The Services Contract further provided that Supreme Group was obligated to reimburse Zurich Services for any payments and expenses related to the claims it presented to Zurich Services, and that Zurich Services investigated, adjusted and paid. Moreover, the Services Contract provides that Zurich Services is in no way financially responsible for paying the claims.

43.    Supreme Group breached the Services Contract by refusing to pay the Invoices when due, as well as by improperly submitting claims to Zurich Services that were not covered by the Services Contract and by then refusing to reimburse Zurich Services for payments it made and expenses it incurred on the claims that Supreme Group improperly submitted. As a result of that breach, Zurich Services suffered damages in an amount of $584,737.96, plus such other amounts as may become due and owing as to be determined at trial.

**SECOND CLAIM FOR RELIEF**

(Unjust Enrichment—Services Contract Claims)

44.    Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

45.    Supreme Group was unjustly enriched when Zurich Services made payments on its behalf based on the improperly-filed and other unpaid Services Claims.

46.    The enrichment was at Zurich Services' expense because Zurich Services relied on Supreme Group's promise to pay and its false reports to the DOL, and made claims payments that it should not have had to make or would not have otherwise made.

47.    Zurich Services requested that Supreme Group reimburse it for the payments on the improperly-filed and other unpaid Services Claims, but Supreme Group refused to do so.

48.     It would offend principles of equity and good conscience for Supreme Group not to reimburse Zurich Services for those payments, and those principles require restitution be made to Zurich Services.

### THIRD CLAIM FOR RELIEF

(Mistake—Services Contract Claims)

49.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

50.     Zurich Services made payments on the improperly-filed and other unpaid Services Claims based on the mistaken belief that it would be reimbursed for those payments and that the NATO-related claims were properly filed as DBA claims with the DOL and thus covered by the Services Contract.

51.     The money mistakenly paid by Zurich Services as a result of Supreme Group's improperly-filed and unpaid claims benefited Supreme Group to the detriment of Zurich Services.

52.     Supreme Group did not pay adequate consideration for the money mistakenly paid.

53.     Supreme Group is not entitled to retain the benefit of the money mistakenly paid on its behalf, and the loss of that money has been disproportionately and unjustly borne by Zurich Services.

54.     Zurich Services requested that Supreme Group reimburse it for the claims payments it made mistakenly, but Supreme Group refused to do so.

55.     It would offend principles of equity and good conscience for Supreme Group not to reimburse Zurich Services for those payments, and those principles require that Supreme Group reimburse Zurich Services for that money.

## FOURTH CLAIM FOR RELIEF

### (Negligent Misrepresentation—Services Contract Claims)

56.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

57.     Based on its contractual relationship with Zurich Services, its knowledge and expertise regarding the circumstances under which the claims in this case arose, its duty to make accurate reports to the DOL under the DBA, and its ongoing communications with Zurich Services regarding the validity of those claims, Supreme Group owed a special position of confidence and trust, which imposed a duty to pay for the claims it submitted and to impart correct information to Zurich Services.

58.     Supreme Group breached its duty to Zurich Services by refusing to reimburse Zurich Services for claims payments and expenses, and by filing false reports with the DOL with respect to the Services Claims, mischaracterizing those claims as falling under the DBA, and by submitting those Services Claims incorrectly based on those false reports.

59.     Supreme Group further breached its duty by failing to correct its misstatements before Zurich Services had made claims payments, even though Supreme Group had in its possession the information to correct its misstatements.

60.     Zurich Services reasonably relied on Supreme Group's misrepresentations concerning its promise to pay and concerning the validity of the Services Claims submitted.

61.     As a result of Supreme Group's conduct, Zurich Services has suffered damages in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### (Promissory Estoppel—Services Contract Claims)

62.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

63.     Zurich Services made payments in excess of its obligations when it paid Supreme Group's improperly filed Services Claims. Zurich Services requested that Supreme Group reimburse it for those payments, but Supreme Group refused to do so.

64.     As reflected in the Services Contract, Zurich Services agreed to pay only DBA claims on behalf of Supreme Group.

65.     Supreme Group promised to reimburse Zurich Services for any claims payments.

66.     Zurich Services reasonably relied upon Supreme Group's promise when it made payments on the improperly-filed and other unpaid Services Claims. But for that promise, Zurich Services would not have made the payments.

67.     Zurich Services has been damaged in an amount to be determined at trial as a result of its reasonable reliance.

68.     It would offend principles of fairness and justice to permit Supreme Group to avoid its promises to compensate Zurich Services for those damages.

### SIXTH CLAIM FOR RELIEF

(Declaratory Judgment—Services Contract Claims)

69.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

70.     Plaintiffs are entitled to a declaratory judgment that reimbursement in an amount to be determined at trial is due by Defendants for the improperly-filed and other unpaid Services Claims, and that Plaintiffs may offset that amount from the premium adjustment amount for policy WC 3995299, in the event that Plaintiffs are obligated to pay Defendants any portion of that premium adjustment, and, to the extent insufficient, that Plaintiffs may collect the balance.

## SEVENTH CLAIM FOR RELIEF

(Breach of Contract—Insurance Claims)

71.    Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

72.    Defendants had contracts with Zurich American in the form of two workers' compensation policies, numbered WC 3995299 and WC 3995351, that provided for Zurich American to provide benefits, and incur claims administration expenses, only for claims arising during work performed pursuant to contracts with the U.S. Military that were covered under the DBA.

73.    Zurich American was not obligated to provide any benefits, or incur any expenses, for claims arising during work performed pursuant to contacts with entities other than the U.S. Military, which fell outside the DBA's coverage. In particular, Zurich American was not obligated to provide any benefits, or incur any expenses, for claims arising during work performed pursuant to a NATO contract.

74.    The policies further confirm that Zurich American will not provide more than its share of benefits and expenses, and that Defendants are responsible for any payments made in excess of the benefits regularly provided by the DBA. Moreover, the policies provide that if Zurich American provides any benefits in excess of benefits regularly provided by the DBA on Defendants' behalf, Defendants must reimburse Zurich American promptly.

75.    Defendants breached these contracts by improperly submitting the Insurance Claims to Zurich American that were not covered by the policies. Zurich American suffered damages in an amount to be determined at trial as a result of that breach because it provided benefits and incurred claims expenses based on these improperly filed claims.

76.     Defendants also breached these contracts by failing to reimburse Zurich American for the benefits it provided and the claims expenses it incurred in connection with the improperly-filed Insurance Claims.

### EIGHTH CLAIM FOR RELIEF

(Unjust Enrichment—Insurance Claims)

77.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

78.     Defendants were unjustly enriched when they received money and other benefits from Zurich American as a result of their improperly-filed Insurance Claims.

79.     The enrichment was at Zurich American's expense because Zurich American relied on Defendants' false reports to the DOL, and provided benefits and incurred expenses that should not have been paid and incurred.

80.     Zurich American requested that Defendants reimburse it for the benefits it provided and expenses it incurred unjustly, but Defendants refused to do so.

81.     It would offend principles of equity and good conscience to permit Defendants to retain that money and other benefits, and those principles require restitution and disgorgement be made to Zurich American.

### NINTH CLAIM FOR RELIEF

(Money Had And Received—Insurance Claims)

82.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

83.     Defendants received money and benefits from Zurich American they should not have received as a result of their improperly-filed Insurance Claims.

84.     Defendants are not entitled to retain the money and benefits had and received, and the loss of that money and benefits has been disproportionately and unjustly borne by Zurich American.

85.     Zurich American requested that Defendants reimburse it for the money and benefits it provided and expenses it incurred unjustly, but Defendants refused to do so.

86.     It would offend principles of equity and good conscience to permit Defendants to retain that money and benefits had and received, and those principles require that Defendants reimburse Zurich American for that money and those benefits and expenses.

### TENTH CLAIM FOR RELIEF

(Mistake—Insurance Claims)

87.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

88.     Zurich American provided benefits to Defendants, and incurred expenses, in connection with the Insurance Claims that Zurich American mistakenly believed were properly filed as DBA claims with the DOL and thus covered by Defendants' policies.

89.     The money and other benefits mistakenly paid by Zurich American as a result of Defendants' improperly-filed Insurance Claims benefited Defendants to the detriment of Zurich American.

90.     Defendants did not pay adequate consideration for the money and other benefits mistakenly paid.

91.     Defendants are not entitled to retain the money and other benefits mistakenly paid, and the loss of that money has been disproportionately and unjustly borne by Zurich American.

92.     Zurich American requested that Defendants reimburse it for the money and benefits it provided and expenses it incurred mistakenly, but Defendants refused to do so.

93.     It would offend principles of equity and good conscience to permit Defendants to retain that money and other benefits, and those principles require that Defendants reimburse Zurich American for that money and those expenses.

## ELEVENTH CLAIM FOR RELIEF

(Negligent Misrepresentation—Insurance Claims)

94.     Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

95.     Based on their contractual relationships with Zurich American, their knowledge and expertise regarding the circumstances under which the claims in this case arose, their duties to make accurate reports to the DOL under the DBA, and their ongoing communications with Zurich American regarding the validity of those claims, Defendants owed a special position of confidence and trust, which imposed a duty to impart correct information to Zurich American.

96.     Defendants breached their duty to Zurich American by filing false reports with the DOL, mischaracterizing their Insurance Claims as falling under the DBA, and by submitting incorrect claims under the insurance policies based on those false reports.

97.     Defendants further breached their duty by failing to correct their misstatements before Zurich American had incurred significant expense, even though Defendants had in their possession the information to correct their misstatements.

98.     Zurich American reasonably relied on Defendants' misrepresentations concerning the validity of the Insurance Claims submitted.

99.     As a result of Defendants' conduct, Zurich American has suffered damages in an amount to be determined at trial.

## TWELFTH CLAIM FOR RELIEF

(Promissory Estoppel—Insurance Claims)

100.   Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

101.   Zurich American made payments in excess of what was required under the DBA when it provided benefits and incurred expenses for Defendants' improperly-filed Insurance Claims. Zurich American requested that Defendants reimburse it for those benefits and expenses, but Defendants refused to do so.

102.   As reflected in the workers' compensation policies, Zurich American agreed to cover Defendants' Insurance Claims only to the extent required under the DBA, and Defendants promised to reimburse Zurich American for any payments made in excess of that requirement.

103.   Zurich American reasonably relied upon Defendants' promise when it provided benefits and incurred related expenses for the improperly-filed Insurance Claims. But for that promise, Zurich American would not have provided the benefits or incurred the expenses.

104.   Zurich American has been damaged in an amount to be determined at trial as a result of its reasonable reliance.

105.   It would offend principles of fairness and justice to permit Defendants to avoid their promise to compensate Zurich American for those damages.

## THIRTEENTH CLAIM FOR RELIEF

(Declaratory Judgment—Insurance Claims)

106.   Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

107.   Plaintiffs are entitled to a declaratory judgment that reimbursement in an amount to be determined at trial is due by Defendants for the Insurance Claims, and that Plaintiffs may offset that amount from the premium adjustment amount for policy WC 3995299, in the event that

Plaintiffs are obligated to pay Defendants any portion of that premium adjustment, and, to the extent insufficient, that Plaintiffs may collect the balance.

## FOURTEENTH CLAIM FOR RELIEF

(Declaratory Judgment—Premium Adjustment)

108.   Plaintiffs repeat and re-allege paragraphs 1 through 39 above as if fully set forth herein.

109.   Supreme Group materially breached its policy WC 3995299, as set forth in the Seventh Claim for Relief.

110.   Plaintiffs are therefore entitled to a declaratory judgment that Zurich American is not obligated to pay $6,807,658, representing the premium adjustment for that policy, to Supreme Group, and that Supreme Group must return any portion of that amount that Zurich American pays while this action is pending.

WHEREFORE, Plaintiffs demand judgment as follows:

i.   Awarding Plaintiffs judgment in an amount to be determined at trial for damages arising out of the payments made, benefits provided and expenses incurred by Plaintiffs related to the claims that were improperly filed by Defendants and/or accounted for under the unpaid Invoices, plus pre-judgment interest.

ii.  Declaring that Plaintiffs are entitled to reimbursement by Defendants for the payments made and expenses incurred by Plaintiffs related to the claims that were improperly filed by Defendants and/or accounted for under the unpaid Invoices, such that Plaintiffs are entitled to offset that reimbursement amount from the premium adjustment amount for policy WC 3995299, in the event that Plaintiffs are obligated to pay Defendants any portion of that premium adjustment, and, to the extent insufficient, to collect the balance.

iii. Declaring that Plaintiffs are entitled to retain $6,807658, representing the premium adjustment for policy WC 3995299, and that Defendants must return any portion of that amount that Plaintiffs pay while this action is pending.

iv.  Awarding Plaintiffs their attorneys' fees, costs, and other expenses incurred in this action, and granting Plaintiffs such other and further relief as is appropriate.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all matters triable by a jury.

Dated: October 4, 2013

New York, New York

Charles C. Platt (NY Bar No. 1678325)
Rebecca A. Haciski (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
Tel:  (212) 230-8800
Fax: (212) 230-8888

*Counsel for Zurich American Insurance Company*
*and Zurich Services Corporation*

21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ZURICH AMERICAN INSURANCE
COMPANY and ZURICH SERVICES
CORPORATION,

                 Plaintiffs,

                 v.

SUPREME FOODSERVICE AG, SUPREME
FOODSERVICE GmbH, SUPREME GROUP
HOLDING SARL, and SUPREME FUELS FZE,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civ. Action No. 12-CV-9117-RJS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 8th day of October, 2013, a true and correct copy of the ***First Amended Complaint*** was served via Federal Express upon the following:

Robert L. Begleiter
Samuel Lucien Butt
Schlam Stone & Dolan LLP
26 Broadway
19th Floor
New York, NY 10004

Dated: October 8, 2013

Charles J. Gazzola